```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

ALEXANDER RODRIGUEZ,

    Plaintiff,

v.                              Case No. 8:14-cv-292-T-33TBM

INTEGON INDEMNITY CORPORATION,

    Defendant.
_____/

**ORDER**

This matter comes before the Court in consideration of Defendant Integon Indemnity Corporation's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. # 30), filed on January 2, 2015. Plaintiff Alexander Rodriguez filed a response in opposition to the Motion (Doc. # 38) on February 17, 2015. For the reasons that follow, the Motion is granted.

**I.  Background**

On October 28, 2010, Rodriguez was operating his motorcycle when he was struck by a car operated by Estrella Monteclaro and owned by George Monteclaro ("the Monteclaros"). (Doc. # 13 at ¶ 5). At the time of the accident, the Monteclaros were insured under an Integon automobile liability insurance policy with a bodily injury

liability limit of $100,000 per person and $300,000 per accident. (Doc. # 30-2 at 2-4).

On October 29, 2010, Integon was notified of the accident and assigned Claims Representative Jeff Cooper to handle the bodily injury claim. (Doc. # 30 at 2). Cooper sent a letter to Rodriguez on November 2, 2010, explaining that Cooper would be "working with [Rodriguez] to handle [his] claim." (Doc. # 30-2 at 6-7).

After (1) Cooper's supervisor authorized payment of the $100,000 policy limit (Doc. # 30-1 at 51) and (2) Cooper was able to confirm that Edward Latour, Esq. would be representing Rodriguez (Id. at 48), Cooper sent Latour two separate letters on November 10, 2010. (Id. at 38-39). First, Cooper sent Latour a letter identifying Latour's client as "ALEX RODRIGUEZ," and providing Integon's statutory insurance disclosure. (Doc. # 30-2 at 29-30).

Second, Cooper sent a separate correspondence to Latour – again identifying the Claim Number and Date of Loss – but referring to Plaintiff in the reference section as "**Anthony** Rodriguez." (Id. at 32-36) (emphasis added). In this letter, Cooper provided:

> This will confirm that GMAC Insurance is offering $100,000 of bodily injury coverage to settle Anthony Rodriguez's claims.

> Enclosed please find our **proposed** Release for the above referenced claim, which we ask that you review. **This proposed Release is not a counter offer**. *If we do not hear from you, we will assume that the proposed release is acceptable. If the enclosed release is not acceptable, please provide for our review a general release that your client intends to execute.*
>
> I have issued the check for $100,000 made payable to your client and your firm. The check will arrive under separate cover. Please hold the check in trust until an acceptable release is executed. *If there are any problems with the manner in which the draft is payable, please notify us immediately.*

(Id.) (emphasis in original). Also on November 10, 2010, Integon issued a check for $100,000 made payable to "LATOUR & ASSOCIATES PA AND ALEXANDER RODRIGUEZ," stating "Bodily Injury, ALEXANDER RODRIGUEZ" in the memo section of the check. (Doc. # 30-2 at 38). The check was tendered to Rodriguez through Rodriguez's counsel and was received by Rodriguez's counsel. (Doc. # 30-2 at 38; Doc. # 30-3 at 18-19; Doc. # 30-4 at 7).

On November 11, 2010, Cooper sent correspondence to Latour referring to the Claim Number and Date of Loss in the reference section, and identifying Rodriguez as "Anthony Rodriguez." (Doc. # 30-2 at 40). In the letter, Cooper stated that he was following up on the November 10, 2010, cover letter and release, advised that the Policy limits check was

3

sent the same day, and provided: "Please be aware that the release I sent was a proposed release and we are agreeable to consider any changes that you would like to make to it." (Id.).

In addition to the correspondence, Cooper called Latour's office on November 11, 2010, and spoke with an individual who confirmed that she received the faxed letter but was not sure whether Latour received the release and cover letter. (Doc. # 30-1 at 36). Cooper left a message to have Latour call Cooper when he got into the office. (Id.). On November 16, 2010, Cooper again called Latour's office and left Latour a message. (Id. at 33).

On November 17, 2010, Cooper sent an additional fax to Latour, referencing the Date of Loss and Claim Number, and identifying Rodriguez as "Alexander Rodriguez." (Doc. # 30-2 at 42). In the letter, Cooper stated that the purpose of the correspondence was "to follow up regarding the settlement check and proposed release that was sent to [Latour's] office on November 10[, 2010]." (Id.). On November 19, 2010, the Monteclaros' appointed defense counsel sent the completed insurance affidavits to Latour and noted that the financial affidavits were forthcoming. (Doc. # 30-3 at 65-67). The

4

financial affidavits were faxed to Latour on November 24, 2010. (Id. at 68).

On November 29, 2010, Cooper left a message for Latour to confirm Latour's receipt of the Policy limits check, release, and the Monteclaros' completed financial affidavits. (Doc. # 30-1 at 28). Cooper left a similar message on December 2, 2010, and followed up with a fax to Latour. (Id. at 25; see Doc. # 30-2 at 44).

On December 16, 2010, Latour initiated a personal injury suit against the Monteclaros in state court, and the Monteclaros were served with the suit on December 27, 2010. (Doc. # 30-6). After the filing of the state court action, Rodriguez and the Monteclaros engaged in settlement discussions. (Doc. # 30-3 at 40-45). Latour, Rodriguez, and Rodriguez's father all testified that they understood that Integon's $100,000 Policy limits were offered and available to settle Rodriguez's claims against the Monteclaros. (Doc. # 30-3 at 45-46, 48-49; Doc. # 30-4 at 7; Doc. # 30-5 at 17-25).

On November 19, 2012, Rodriguez entered into a settlement agreement with the Monteclaros, whereby the Monteclaros agreed to a $5.1 million consent judgment. (Doc. # 30-3 at 163). On December 15, 2012, Integon reissued a check

5

for the Policy limits, which Rodriguez negotiated as reflected in the partial satisfaction of the final judgment executed by Rodriguez on December 21, 2012. (Doc. # 30-2 at 48; Doc. # 30-3 at 50-51, 80; Doc. # 30-4 at 32). On October 18, 2013, Rodriguez filed a Civil Remedy Notice against Integon, alleging that Integon "repeatedly refused to tender payment of policy limits when it has full and adequate information in its possession which would cause a reasonably prudent person to have settled the claim." (Doc. # 30-3 at 51, 82-84).

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g

6

Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant

7

summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert</u>. <u>denied</u>, 456 U.S. 1010 (1982).

### III. **Analysis**

Within the amended complaint, Rodriguez asserts two counts against Integon: (1) common law bad faith and (2) statutory bad faith. (Doc. # 13).

> A "bad faith" action arises in situations where an insurer has breached its contractual duty of good faith. Specifically, [t]he contractual duty of the insure[r] to defend justifies an implication that the insurer will exercise ordinary care and good faith in so proceeding. Accordingly, when an insurer under such a policy contract undertakes to defend an action against the insured and becomes involved in negotiations for settlement, the law imposes the duty that it act therein in good faith.

<u>Continental Cas. Co. v. City of Jacksonville</u>, 550 F. Supp. 2d 1312, 1335-36 (M.D. Fla. 2007) (internal citations omitted). "The essence of a 'bad faith' insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its

8

insured by failing to properly or promptly defend the claim . . . which results in the insured being exposed to excess judgment." Kelly v. Williams, 411 So. 2d 902, 904 (Fla. 5th DCA 1982).

Florida law authorizes an individual to "bring a civil action against an insurer when such person is damaged" for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155 (1), (1)(b)(1). "The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980).

While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, courts have, in certain circumstances, concluded as a matter of law that the insurance company did not act in bad faith. See Berges v. Infinity Ins., 896 So. 2d 665, 680 (Fla. 2004).

In the present matter, Rodriguez's amended complaint alleges that the letter sent by Cooper to Rodriguez's counsel

9

on November 10, 2010, offered $100,000 of bodily injury coverage to "Anthony Rodriguez" rather than "Alexander Rodriguez," and that, as a result of "Defendant only offer[ing] to pay someone other than the Plaintiff," Integon "never timely offered to tender its policy limits to the Plaintiff, Alexander Rodriguez." (Doc. # 13 at ¶¶ 7-11). This Court disagrees.

As an initial matter – during depositions taken in connection with the present matter – Latour (Rodriguez's counsel), Rodriguez, and Rodriguez's father each stated that they understood that the $100,000 Policy limits was available during negotiations between Rodriguez and the Monteclaros to settle Rodriguez's claim. (Doc. # 30-3 at 45-46, 48-49; Doc, # 30-4 at 7; Doc. # 30-5 at 17-25). Moreover, Rodriguez's father submitted that – regardless of the name on the check – he was never willing to settle his son's claims for Integon's $100,000 Policy limits. (Doc. # 30-5 at 11-13). Therefore, there is no support for the contention that Cooper's reference to Rodriguez as "Anthony" caused confusion or otherwise led to an untimely offer on behalf of Integon.

Furthermore, to the extent that Rodriguez argues that the offer was untimely because he received the Monteclaros' financial affidavits fifteen days after the accident (Doc. #

30-3 at 184, 185; Doc. # 38 at 7-8), that argument also fails. The Court notes that Latour, Rodriguez, and Rodriguez's father all stated that they were not willing to settle Rodriguez's claim for Integon's $100,000 Policy limits. (Doc. # 30-3 at 8, 23; Doc. # 30-4 at 27, 36; Doc. # 30-5 at 8-9, 11-13).

The crux of a bad faith claim is whether under all the circumstances, the insurer failed to settle a claim when it had a reasonable opportunity to do so. See Contreras v. United States Sec. Ins. Co., 927 So. 2d 16, 20 (Fla. 4th DCA 2006). Given Integon's extensive efforts to settle this claim, as outline above, the Court finds no support for Rodriguez's bad faith claims. Accordingly, Integon's Motion for Summary Judgment is granted.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Integon Indemnity Corporation's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. # 30) is **GRANTED.**

(2) The Clerk is directed to enter judgment in favor of Defendant.

(3) The Clerk is further directed to **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of March, 2015.

*/s/ Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record